## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

FCA US LLC,               )
                         )
        Plaintiff,     )  Case No.:
                         )
vs.                   )
                         )
SPITZER AUTOWORLD AKRON, LLC,  )
                         )
        Defendant.    )
_____ )

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff FCA US LLC ("FCA US") files this action for declaratory judgment pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure. In support thereof, FCA US states as follows:

### A. Parties

1.      FCA US is a Delaware limited liability company with its principal place of business in Auburn Hills, Michigan. FCA US is 100% owned by FCA North America Holdings LLC, a Delaware limited liability company with its principal place of business in Auburn Hills, Michigan. FCA North America Holdings is 100% owned by FCA Foreign Sales Holdco Ltd., a company organized under the laws of the United Kingdom with its principal place of business in the United Kingdom. FCA Foreign Sales Holdco Ltd. is 100% owned by SFS UK 1 Limited, a company organized under the laws of the United Kingdom with its principal place of business

in the United Kingdom. SFS UK 1 Limited is 100% owned by Stellantis N.V. (formerly known as Fiat Chrysler Automobiles N.V.), which is a publicly traded company organized under the laws of the Netherlands with its principal place of business in the Netherlands.

2.      Upon information and belief, Spitzer Autoworld Akron, LLC ("Spitzer") is an Ohio limited liability company with its principal place of business in Ohio.

3.      Upon information and belief, all members of Spitzer are citizens of the State of Ohio for the purposes of determining jurisdiction under 28 U.S.C. § 1332.

**B. Jurisdiction and Venue**

4.      The Court has subject matter jurisdiction of this matter pursuant to 28 U.S.C. § 1332(a)(2), as (1) this action is between a citizen of a state and a citizen of a foreign state, and (2) the amount in controversy exceeds $75,000.

5.      This Court has personal jurisdiction over Spitzer pursuant to the terms of a June 7, 2011 stay agreement, executed by the Parties in connection with a matter pending before the Ohio Motor Vehicle Dealers Board ("Stay Agreement"). *See* Stay Agreement, attached as Exhibit A. This Stay Agreement, in part, forms the basis of FCA US's request for declaratory relief, *see, e.g., infra* ¶¶ 25–42, and provides that "[a]ll Parties [to the Agreement] consent and submit to the personal

jurisdiction of the United States District Court for the Eastern District of Michigan for any dispute relating to this Agreement." Ex. A at § 7.1.

6.     Venue is proper in this judicial district under 28 U.S.C. 1391(b)(3) because Spitzer is subject to the Court's personal jurisdiction with respect to this action.

### C. Background

7.     On April 30, 2009, Chrysler LLC filed for a petition for bankruptcy (the "Bankruptcy") under Chapter 11 of the United States Bankruptcy Code.

8.     A new entity, Chrysler Group LLC, was formed and purchased select assets and liabilities out of the bankruptcy estate of Chrysler LLC.  Chrysler Group LLC was later renamed FCA US LLC.  The two entities are synonymous for the purposes of this Complaint and associated exhibits.

9.     Prior to the Bankruptcy, Spitzer had operated as a Chrysler, Jeep and Dodge dealer in Akron, Ohio for Chrysler LLC.

10.    As part of the Bankruptcy sale process, Spitzer's dealer agreements with Chrysler LLC were rejected.

11.    During the pendency of the Bankruptcy, Congress enacted Section 747 of the Consolidated Appropriations Act of 2010 (Public Law 111-117) ("Section 747"), which, in relevant part, allowed Chrysler LLC dealers whose dealer

agreements had been rejected in the Bankruptcy to pursue the right to be added to the dealer network of FCA US via binding arbitration.

12.     On June 1–5, 2010, pursuant to Section 747, FCA US and Spitzer arbitrated the issue of whether or not Spitzer should be added to FCA US's dealer network before Arbitrator David Friedman (the "Arbitrator").

13.     On July 13, 2010, the American Arbitration Association issued the Arbitrator's determination that required FCA US to add Spitzer to its dealer network, initially at 1535 Vernon Odom Blvd., Akron, Ohio 44302 (the "V. Odom Location"), before moving to a new facility on Arlington Road in Green, Ohio (the "Green Location").

14.     On July 23, 2010, the Arbitrator clarified his determination to require that the construction of Spitzer's new facility at the Green Location be completed by December 31, 2011.

15.     On October 1, 2010, consistent with the Arbitrator's determination, FCA US issued to Spitzer a letter of intent (the "LOI") providing for the issuance of Dodge, Chrysler, and Jeep Term Agreements at the V. Odom Location, and ultimately Dodge, Chrysler, and Jeep Sales and Service Agreements at the Green Location. *See* LOI, attached as Exhibit B.

16.     The LOI set forth a number of requirements which, if not met, would cause the LOI to "automatically terminate," in which case FCA US would be under

no obligation to enter into any agreement with Spitzer with respect to the V. Odom Location, the Green Location, or any other location.

17.     Among the requirements in the LOI was "the final, successful resolution of all protests, lawsuits, demands for arbitration or other legal challenges seeking to block the proposed establishments *at either* the V. Odom [Location] or the [Green Location]."

18.     The LOI further provides that the "LOI shall terminate effective on the date of a final decision barring the proposed establishment at either location."

19.     On November 22, 2010, as required by Ohio law, FCA US issued written notice (the "Notice") to Fred Martin Motor Company ("Fred Martin") and Falls Motor City, Inc. ("Falls") that FCA US intended to approve the establishment of Chrysler, Jeep, and Dodge vehicle lines at the V. Odom Location.

20.     The Notice only contemplated the proposed establishment at the V. Odom Location—not the Green Location.

21.     On December 2 and 10, 2010, Fred Martin and Falls, respectively, filed separate protests of the proposed establishment at the V. Odom Location with the Ohio Motor Vehicle Dealers Board.  These protests were subsequently consolidated by order of Hearing Officer John Tanoury on January 12, 2011, and are referred to hereafter as the "Consolidated Protests."

22.     The Consolidated Protests only protested the proposed establishment at the V. Odom Location—not the Green Location.

23.     While the Consolidated Protests were pending, three cases—later consolidated—were pending in federal court, each concerning whether Section 747 preempted various state dealer protest laws (the "Federal Litigation").  These cases were captioned as follows:

a. *Chrysler Group LLC v. Fox Hills Motor Sales, Inc. et al.*, 10-CV-12984 (E.D. Mich.);

b. *Chrysler Group LLC v. Sowell Automotive Inc. et al.*, 10-CV-13908 (E.D. Mich.); and

c. *Livonia Chrysler Jeep, Inc. v. Chrysler Group LLC*, 10-CV-13290 (E.D. Mich.).

24.     Spitzer was a party to the consolidated Federal Litigation.

25.     Because the Federal Litigation contemplated whether Section 747 preempted Fred Martin and Falls' protest rights under Ohio Rev. Code Ann. §§ 4517.01 et seq. (the "Ohio Dealer Act"), the parties to the Consolidated Protests entered into the Stay Agreement on June 7, 2011 to stay the protest proceedings pending the outcome of the Federal Litigation.  *See generally* Ex. A.

26.     The Stay Agreement, in relevant part, provided as follows:

a. **Section 4.2**: If Section 747 is found in the Federal Litigation to be (i) constitutional, but (ii) does not preempt state law, this Stay Agreement shall be lifted and the parties will proceed forward with the Consolidated Protests. This Stay Agreement shall not be

6

lifted until all parties to the Federal Litigation have exhausted their respective appellate rights.

b. **Section 4.3**: If the Consolidated Protests occur as contemplated in Section 4.2, and either Fred Martin or Falls are successful, there shall be no establishment of Spitzer as a new dealer in the [FCA US] network at the Akron Locations. If at any time the Consolidated Protests proceed forward as contemplated in Section 4.2, and the protests lodged by Fred Martin and Falls are denied, Spitzer will have three hundred (300) days from the date of such denial to complete construction and occupancy of its new facility in Green, Ohio. If the construction and occupancy of this facility is not completed within 300 days, the Letter of Intent between [FCA US] and Spitzer shall terminate, and there shall be no establishment of a Spitzer dealership at the Akron locations. If the Consolidated Protests are denied, and in the absence of any additional Dealer Board or Court-ordered stay, nothing in this Agreement shall prohibit Spitzer from commencing business at the V. Odom Blvd. location pursuant to the terms of [FCA US's] Letter of Intent. Subject to the foregoing terms of this paragraph 4.3, if Spitzer commences business at the V. Odom Blvd. address but fails, for any reason, to complete construction and occupancy of the new facility in Green, Ohio and begin dealership operations at that location within 300 days of the denial of the Consolidated Protests, then not only will Spitzer not be permitted to ever open at the Green location but also will then immediately and voluntarily cease doing business as a [FCA US] dealer at the V. Odom Blvd. location.

27. On July 23, 2013, following a bench trial, the Eastern District of Michigan issued an order determining that Section 747 was constitutional and did not preempt state dealer laws.

28. While various parties appealed the order to the Sixth Circuit with respect to the dealer laws of other states (specifically, Michigan and Nevada), Spitzer did not appeal, and the order was thus left intact as it related to the Ohio Dealer Act.

29.     The effect of the Eastern District of Michigan's determination that Section 747 did not preempt the Ohio Dealer Act was to confirm that Fred Martin and Falls had the right to protest the establishment at the V. Odom Location.

30.     After the Eastern District of Michigan's order in the Federal Litigation, Spitzer did not pursue the establishment of a dealership at the V. Odom Location, as contemplated by both the LOI and the Notice.

31.     Nor did Spitzer pursue a resolution of the Consolidated Protests in a timely manner.

32.     In fact, the Consolidated Protests were dormant for roughly seven years without any action taken by Spitzer to further its effort to establish at the V. Odom Location.

33.     In fact, at some point prior to May 7, 2021, Spitzer sold its real interest in the V. Odom Location—signaling Spitzer's intention not to establish at the V. Odom Location.

34.      Spitzer moved to dismiss the Consolidated Protests on May 7, 2021, arguing that the Consolidated Protests were "moot" because (1) Spitzer did not intend to operate at the V. Odom Location; and (2) the Consolidated Protests did not contemplate the establishment of a dealership at the Green Location.

35.     On or about July 20, 2022, the Ohio Motor Vehicle Dealers Board issued a final adjudication order dismissing the Consolidated Protests as moot.

36.     The final adjudication order was not a "final, successful resolution" of the Consolidated Protests from FCA US or Spitzer's perspective, as required by the LOI.

37.     Absent a "final, successful resolution" of the Consolidated Protests, the LOI "automatically terminate[d]," entailing that FCA US is "under no obligation to enter into any agreement" with respect to the V. Odom Location, the Green Location, or any other location.

38.     Moreover, Spitzer's sale of its real property at the V. Odom Location and subsequent confirmation that it did not intend to operate at the V. Odom Location violate the LOI requirement that Spitzer operate at the V. Odom Location prior to moving to the Green Location.

39.     Under the LOI, Spitzer's violation of the requirement that it operate at the V. Odom Location prior to moving to the Green location also entails that FCA US is "under no obligation to enter into any agreement" with respect to the V. Odom Location, the Green Location, or any other location.

40.     Fred Martin and Falls were "successful," as contemplated by Section 4.3 of the Stay Agreement, because the result of the Consolidated Protests was that no dealership would be established at the V. Odom Location.

41.     Because Fred Martin and Falls were "successful," as contemplated by Section 4.3 of the Stay Agreement, the Stay Agreement provides that "there shall be

no establishment of Spitzer as a new dealer in the [FCA US] dealer network at [the V. Odom Location or the Green Location]."

42.    Under the LOI and Stay Agreement, the resolution of the Consolidated Protests independently extinguishes any obligation FCA US had to establish Spitzer at the V. Odom Location, the Green Location, or any other location.

43.    On July 5, 2022, Spitzer notified FCA US of its intention to move forward with establishing a dealership at the Green Location.

44.    On July 12, 2022, FCA US responded to Spitzer, noting that the effect of the resolution of the Consolidated Protests and Spitzer's decision to sell its real interest in the V. Odom Location was to terminate the LOI, and that as a result, Spitzer should not incur any cost or expense in attempting to construct a facility or otherwise establish at the Green Location.

45.    On August 2, 2022, Spitzer wrote FCA US once again, indicating its intention to file suit to enforce the LOI absent FCA US's agreement to establish Spitzer at the Green Location.

**D. Request for Declaratory Relief**

46.    FCA US incorporates all previous allegations as if fully set forth herein.

47.    The Parties disagree as to whether the effect of the resolution of the Consolidated Protests was to terminate the LOI.

48.     The Parties further disagree as to whether the effect of Spitzer's sale of its real interest in the V. Odom Location was to terminate the LOI.

49.     The Parties further disagree as to whether FCA US is obligated to provide a dealer agreement to Spitzer for the Green Location.

50.     On the basis of these disagreements, Spitzer has threatened to file suit against FCA US.

51.     The Declaratory Judgment Act, 28 U.S.C. § 2201, provides that "[i]n a case of actual controversy within its jurisdiction ..., any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

52.     Where, as here, there is a controversy "as to the meaning and effect of a written contract interpretation" a declaratory judgment "may be sought from and made by . . . a court having jurisdiction over the parties, there is no doubt." *Panhandle E. Pipe Line Co. v. Michigan Consol. Gas Co*., 177 F.2d 942, 944 (6th Cir. 1949); *cf. Rib Roof Metal Sys., Inc. v. Nat. Storage Centers of Redford, Inc*., No. 07-13731, 2009 WL 963675 (E.D. Mich. Apr. 8, 2009) (granting judgment to plaintiff on standalone declaratory judgment claim).

Wherefore, FCA US respectfully requests that the Court enter judgment in its favor and against Spitzer herein, and that the Court declare that:

11

a.  The LOI is extinguished by virtue of the resolution of the Consolidated Protests;

b.  The LOI is extinguished by virtue of Spitzer's sale of its real interest in the V. Odom Location; and

c.  FCA US is under no obligation to provide any dealer agreement to Spitzer at the V. Odom Location, the Green Location, or any other location.

## SPEEDY HEARING

Pursuant to Federal Rule of Civil Procedure 57, FCA US requests that the Court order a speedy hearing of this action.

## TRIAL DEMAND

Plaintiff FCA US LLC requests a trial in Detroit, Michigan in the above-captioned matter.

Dated: August 17, 2022                    Respectfully Submitted,

/s/Brian S. Tobin
Brian S. Tobin (P67621)
Carlson, Gaskey & Olds, P.C.
400 W. Maple, Suite 350
Birmingham, MI  48009
Telephone: 248-988-8360
btobin@cgolaw.com

-and-

12

Mark T. Clouatre (admitted to E.D. Mich.)
John P. Streelman (application for admission
forthcoming)
Corey R. Nevers (application for admission
forthcoming)
Nelson Mullins Riley & Scarborough LLP
1400 Wewatta Street, Suite 500
Denver, CO  80202
T:  303.583.9900
F:  303.583.9999
mark.clouatre@nelsonmullins.com
john.streelman@nelsonmullins.com
corey.nevers@nelsonmullins.com

*Attorneys for Plaintiff FCA US LLC*